**Shearn MOODY, Jr., Appellant,**

v.

**INTERNAL REVENUE SERVICE.**

**No. 80–1456.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 10, 1981.

Decided June 8, 1981.

As Amended June 8, 1981.

---

2. The amount of money involved may well be *de minimis* and hence unworthy of litigation.

William A. Dobrovir, Washington, D.C., with whom Joseph D. Gebhardt, Washington, D.C., was on the brief for appellant.

Richard W. Perkins, Atty., Dept. of Justice, Washington, D.C., with whom M. Carr Ferguson, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., Michael L. Paup, Robert A. Bernstein and George L. Hastings, Jr., Attys., Dept. of Justice, Washington, D.C., were on the brief for appellee.

Ernest Brown, Atty., Dept. of Justice, Washington, D.C., for appellee.

Before McGOWAN, TAMM and WALD, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

This action is an appeal from a judgment of the district court upholding the Internal Revenue Service's ("IRS") refusal to disclose documents pertinent to appellant's Freedom of Information Act ("FOIA") requests. Appellant Shearn Moody, Jr. ("Moody") filed three requests [1] pursuant to the FOIA, 5 U.S.C. § 552, asking for the release of all records in the IRS's possession regarding Moody, several business and charitable entities in which he had interests,[2] and "Project Southwest." [3] The IRS released many documents pertinent to these requests, but withheld approximately 150 documents or portions of documents, relying on exemptions (b)(3), (b)(5), (b)(7)(C), and (b)(7)(D) of 5 U.S.C. § 552. After an *in camera* examination of a sample of thirty-five of the challenged withholdings, the district court upheld the IRS's claims of exemptions with respect to all except portions of four documents.

The appellant promptly challenged every aspect of the trial court's decision, seeking before this court both reversal of the findings of applicability of FOIA exemptions to particular documents and a remand on the issues of segregability and the propriety of an award of attorney's fees. The bulk of appellant's arguments on appeal were explicitly, and we feel correctly, dealt with in the district court's admirably comprehensive nineteen page opinion. However, we find two issues deserve additional consideration, and remand the case to the district court for this purpose.

## I. THE SEGREGABILITY OF RETURN INFORMATION

■ "[Tax] return information" is exempt from disclosure under the FOIA pursuant to the terms of section 6103 of the Internal Revenue Code, 26 U.S.C. § 6103.[4] One of the terms of section 6103, added in 1976 as the Haskell Amendment,[5] excludes from the definition of "return information" any "data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." 26 U.S.C. § 6103(b)(2). Our recent decision in *Neufeld v. IRS*, 646 F.2d 661 (D.C.Cir.1981), adopting the position enunciated by the Ninth Circuit in *Long v. IRS*, 596 F.2d 362 (9th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980), held that return information from which identifying material could be deleted was disclosable under the FOIA. Appellant seeks a

---

1. Moody filed his first request with the IRS on September 17, 1975. He was allowed to amend his complaint in this action on November 9, 1978, to bring within its scope documents requested on January 19, 1978, and July 25, 1978. Brief for the Appellee at 3–4.

2. The entities are: W. L. Moody & Company (Bankers), W. L. Moody & Company Trust Company, Moody Foundation Trust, American National Insurance Company, Shearn Moody Foundation, Empire State Life Insurance Company, Empire Life Insurance Company, Empire Life Insurance Company of America, Empire International Films, Inc., Credit Factoring, Inc., and Wilde Productions, Inc. Joint Appendix ("J.A.") 6 (Plaintiff's Amended Complaint).

3. Between 1972–74, the IRS undertook an investigation, denominated "Project Southwest,"

of political corruption in Texas and its attendant tax consequences. Shearn Moody, Jr., was one of the investigation's targets, although he was never indicted, and in fact the investigation revealed his entitlement to a refund. Brief for Plaintiff-Appellant at 40; *Moody v. IRS* ("Mem.Op."), Civ.No. 77–1825, slip op. at 3 (D.D.C. Feb. 23, 1980); J.A. 67.

4. *See Chamberlain v. Kurtz*, 589 F.2d 827, 838–39 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979) (section 6103 of the Internal Revenue Code is a statute exempting material from disclosure within the meaning of exemption 3 of the FOIA).

5. The change, like the rest of Pub.L. 94–455, took effect on January 1, 1977.

remand of this case to afford the trial judge an opportunity to examine the section 6103 withholdings from Document 73 [6] in light of our opinion in *Neufeld.*

While we recognize that the district judge has already expended considerable time and effort in his attempt to resolve this case, we find that we must agree with appellant on this point. After a close reading of the trial court's opinion, we were unable to discover any indication that it was aware of the Haskell Amendment,[7] let alone that it considered the possibility that strategic editing of Document 73 may remove some of the withheld "tax return information" from that category.[8] Thus, as in *Neufeld,* we must remand the case to the district court to allow it, in its "discretion to determine what information, other than name or address, poses a risk of identifying a taxpayer and how great that risk is," *id.,* at 665, and whether this information can be meaningfully segregated [9] from otherwise disclosable information contained in Document 73.

6. Document 73 "is a 17 page memorandum 'concerning the initiation, operation, and results of the Southwest Project and including information on particular taxpayers as examples.'" Brief for Plaintiff-Appellant at 16.

7. The court inserted an excerpt of the statutory definition of "return information" at footnote 8 of its opinion. Mem.Op., *supra,* slip op. at 6 n.8; J.A. 70. The quoted definition does not include that part of the statute which constitutes the Haskell Amendment. *Id.* The text likewise fails to mention the limitation on the definition of "return information." *Id.* at 6–8; J.A. 70–72.

8. Unlike the district court opinion (which we nonetheless found insufficient) in *Neufeld,* the district court opinion here does not mention the Ninth Circuit's *Long* decision. (Our *Neufeld* decision, of course, was decided subsequent to the issuance of the district court opinion in this case.) The only mention of segregation in the entire discussion of the section 6103 withholdings occurs at the bottom of page 8, and refers to the segregation of non-waived from waived material, rather than the segregation of identifying material: "[T]he IRS correctly segregated and withheld return information concerning third parties who have not waived their rights to have their return information kept confiden-

## II. DOCUMENT 19 AND THE WORK PRODUCT EXEMPTION

Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), permits non-disclosure of:

inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. . . .

Among the civil litigation privileges incorporated into the FOIA by this section is the attorney work product privilege. *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975); *Jordan v. United States Department of Justice,* 591 F.2d 753, 775 (D.C.Cir. 1978) (*en banc*).

The work product privilege, "distinct from and broader than the attorney-client privilege," *United States v. Nobles,* 422 U.S. 225, 238 n.11, 95 S.Ct. 2160, 2170, n.11, 45 L.Ed.2d 141 (1975), exempts from discovery [10] documents prepared by an attorney in contemplation of litigation. *See Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980);

tial." Mem.Op.,*supra,* slip op. at 8–9; J.A. 72–73.

9. The risk of indirect identification may be greater in this case than in either *Neufeld* or *Long* because a smaller and easier to identify group of people was involved in this document-generating investigation. However, the initial decision as to segregability is for the district court to make; we cannot rule on it as a matter of law under these circumstances.

10. The work product privilege, unlike the attorney-client privilege, is a qualified one. Rule 26(b)(3) of the Federal Rules of Civil Procedure, which codifies the work product doctrine, provides that discovery of factual work product may be had

upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Documents revealing an attorney's "mental processes," however, are accorded "special protection." *See id.; Upjohn Co. v. United States,* 449 U.S. 383, 400–——, 101 S.Ct. 677, 687–88, 66 L.Ed.2d 584 (1981) (requiring "far stronger showing of necessity and unavailability" for opinion than factual work product).

*Jordan v. United States Department of Justice, supra,* 591 F.2d at 775. Document 19, which the trial court held non-disclosable as attorney work product,[11] seems to fall within this class. It details a meeting held between an IRS lawyer and the federal district judge presiding over the receivership of W. L. Moody & Sons, Banker, regarding the enforcement of a summons served on E. O. Buck, the bank's receiver. Brief for Appellee at 29. Prepared as a memorandum to the file by the participating IRS attorney, Document 19 predates by two days the filing of a petition to enforce the summons. *Id.*

■ Appellant contends, however, that the work product doctrine does not cover Document 19 because it is the fruit of impermissible legal conduct. According to appellant, the purposeful exclusion of opposing counsel from the meeting violated the court's rules[12] and the American Bar Association's ethical standards.[13] Moody argues

---

11. Mem.Op., *supra,* slip op. at 9; J.A. 73.

12. The appellant contends that the meeting violated Rule 4 of the Rules of the United States District Court for the Southern District of Texas. The rule provides:

    A. *Communication on Pending Cases.* A Judge of this Court will not entertain any communication concerning any pending case or matter except under the following circumstances:

    (1) Matters submitted in open court, or at in-chambers conference, pursuant to notice;

    (2) Matters presented by motion or other application filed with the Clerk, and by him transmitted to the Judge;

    (3) By written communication, with contemporaneous copies to all counsel;

    (4) If counsel desires to arrange for an in-chambers conference or hearing before the Judge, he shall *contact opposing counsel and* arrange for a mutually convenient time; and then request such conference or hearing through the courtroom deputy clerk.

    B. *Requests for Immediate Relief; Contact Through the Clerk; Ex Parte Hearings in Extreme Circumstances.* Counsel desiring to ascertain when and where application may be made for restraining orders or other matters requesting immediate relief should do so through the office of the Clerk.

    Exceptions will be made to the foregoing, and counsel permitted an ex parte application to the Court, only in the most extreme circumstances, when time does not permit contact with or presence of opposing counsel, and when the moving party or his attorney has not been dilatory.

13. Appellant points to Ethical Consideration 7–35 of the American Bar Association's ("ABA") Model Code of Professional Responsibility ("Code") as the standard by which to evaluate the attorney's actions. This provision reads:

    All litigants and lawyers should have access to tribunals on an equal basis. Generally, in adversary proceedings a lawyer should not communicate with a judge relative to a matter pending before, or which is to be brought before, a tribunal over which he presides in circumstances which might have the effect or give the appearance of granting undue advantage to one party. For example, a lawyer should not communicate with a tribunal by a writing unless a copy thereof is promptly delivered to opposing counsel or to the adverse party if he is not represented by a lawyer. Ordinarily an oral communication by a lawyer with a judge or hearing officer should be made only upon adequate notice to opposing counsel, or, if there is none, to the opposing party. A lawyer should not condone or lend himself to private importunities by another with a judge or hearing officer on behalf of himself or his client.

American Bar Foundation, Annotated Code of Professional Responsibility 373–74 (1979) (footnote omitted). However, the ABA specifically states in its Preliminary Statement to the Code that "[t]he Ethical Considerations are *aspirational* in character and represent the objectives toward which every member of the profession *should strive." Id.* at 3 (emphasis supplied). Violations of "aspirational" norms, though not to be applauded, may not in themselves be grounds for punitive actions. Indeed, the Code contains a separate set of rules, called "Disciplinary Rules," which are "mandatory in character" and, if violated, are grounds for "disciplinary action." *Id.* It is against the standards set by the Disciplinary Rules that we must judge the actions of the IRS lawyer here. The Disciplinary Rule which corresponds to Ethical Consideration 7–35, DR 7–110, reads in pertinent part:

    (B) In an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending, except:

    (1) In the course of official proceedings in the cause.

    (2) In writing if he promptly delivers a copy of the writing to opposing counsel or to the adverse party if he is not represented by a lawyer.

    (3) Orally upon adequate notice to opposing counsel or to the adverse party if he is not represented by a lawyer.

that it would be a perversion of the work product doctrine, designed "to encourage effective legal representation *within the framework of the adversary system*,"[14] to allow it to be used to "cover up" activities destructive of that system.

■ We agree that, at least in some circumstances, a lawyer's unprofessional behavior may vitiate the work product privilege. We therefore remand this case to the district court so that it may determine in the first instance whether such circumstances exist in this case, and more fundamentally, whether the actions of the IRS attorney in fact violated professional standards.[15]

■ The work product privilege creates a zone of privacy within which a lawyer can prepare his case free of adversarial scrutiny. From its inception, however, the courts have stressed that the privilege is "not to protect any interest of the attorney, who is no more entitled to privacy or protection than any other person, but to protect the adversary trial process itself." *Coastal States Gas Corp. v. Department of Energy, supra,* 617 F.2d at 864; *see Hickman v. Taylor,* 329 U.S. 495, 512, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947); *Jordan v. United States Department of Justice, supra,* 591

F.2d at 775. Some protection of lawyers' "heretofore inviolate" thoughts was deemed necessary to avoid an incentive to develop "unfair[ ] and sharp practices . . . [for] the giving of legal advice and in the preparation of cases for trial," as the development of such practices would "poorly serve . . . the interests of the clients and the cause of justice." *Hickman v. Taylor, supra,* 329 U.S. at 511, 67 S.Ct. at 394.

It would indeed be perverse, as appellant contends, to allow a lawyer to claim an evidentiary privilege[16] to prevent disclosure of work product generated by those very activities the privilege was meant to prevent. Non-disclosure would then[17] provide an incentive for, rather than against, the disfavored practices. The integrity of the adversary process is not furthered by protecting a lawyer who steps outside his role as "an officer of the court . . . work[ing] for the advancement of justice while faithfully protecting the rightful interests of his clients."[18] An attorney should not be able to exploit the privilege for ends outside of and antithetical to the adversary system any more than a client who attempts to use the privilege to advance criminal or fraudulent ends.[19]

(4) As otherwise authorized by law. *Id.* at 374.

14. *Jordan v. United States Department of Justice, supra,* 591 F.2d at 775 (emphasis in original).

15. Because the trial court apparently thought the propriety of the attorney's conduct irrelevant to the applicability of the work product privilege, it made no findings on the subject. As Rule 4 of the Rules of the United States District Court for the Southern District of Texas contains a waiver provision, *see* note 12 *supra,* and no violation of a Disciplinary Rule has yet been alleged, *see* note 13 *supra,* it is conceivable that the attorney's conduct was in fact proper under the circumstances.

16. In general, "[e]videntiary privileges . . . are not favored . . . ." *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979). *But see In re Grand Jury Subpoena Dated November 9, 1979,* 484 F.Supp. 1099, 1102 (S.D.N.Y.1980) ("The work product rule is simply not intended to govern or control the manner in which an attorney prepares his case . . . ."). The Southern District of New York appears to be the only federal court which has

faced the work product issue presented by the instant case. Although disposed to disagree with the approach we adopt in this opinion, *see id.,* the court there found it unnecessary to decide the issue as disclosure of the involved documents was justified on other grounds.

17. We stress that in this case, appellee has admitted engaging in the conduct which forms the basis of the charge of unprofessional conduct. We are therefore not dealing with a situation where disclosure is sought for the purpose of determining whether such misbehavior has in fact occurred. The latter case involves an entirely different problem—an exception which threatens to swallow the rule—than is presented in this case.

18. *Hickman v. Taylor, supra,* 329 U.S. at 510, 67 S.Ct. at 393.

19. *See In re Special September 1978 Grand Jury (II),* 640 F.2d 49, 63 (7th Cir. 1980) (client cannot assert the work product doctrine when there has been a showing of ongoing client fraud); *In re Grand Jury Proceedings,* 604 F.2d 798, 803 (3d Cir. 1979) (same).

However, the conclusion that an attorney has no right to object to the disclosure of work product made possible by his misconduct [20] does not necessarily mean that the work product privilege is inapplicable to such documents. Unlike the attorney-client privilege, which exists solely for the benefit of the client, and can be asserted and waived exclusively by him,[21] the work product privilege creates a legally protectable interest in non-disclosure in two parties: [22] lawyer and client. Just as "an invasion of the attorney's necessary privacy ... [may] not [be] justified by the misfortune of representing a fraudulent client," *In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 63 (7th Cir. 1980), the client's interest in preventing disclosures about his case may survive the misfortune of his representation by an unscrupulous attorney. A court must look to all the circumstances of the case, including the availability of alternate disciplinary procedures,[23] to decide whether the policy favoring disclosure outweighs the client's legitimate interest [24] in secrecy. No court should order disclosure under the FOIA or in discovery if the disclosure would traumatize the adversary process more than the underlying legal misbehavior.

We have attempted to outline in our footnotes to this opinion some of the factors we would take into consideration when balancing the policy favoring disclosure against that favoring continued secrecy. However, each case obviously presents new permutations and combinations of fact patterns, all of which must be taken into account when reaching a decision. For this reason, the trial court, which is both familiar with the case and in a position to gather any evidence deemed necessary to a reasoned decision, is best equipped to weigh the balance.

We therefore remand this case for reconsideration of the withholdings from Document 19 in light of our *Neufeld* decision, for an evaluation of the attorney's conduct and, if it is found in violation of professional standards, a determination of whether his breach of professional standards vitiated the work product privilege otherwise attributable to Document 19. If the documents released as a result of the proceedings on remand are sufficient for a court to conclude appellant substantially prevailed in his FOIA action, he will then become eligible for an award of attorney's fees. *See Church of Scientology of California v. Harris*, 653 F.2d 584 (D.C.Cir. 1981).

*Remanded for proceedings consistent with this opinion.*

**20.** Even appellant has conceded that only tainted work product need be released. What constitutes "taint," of course, must be decided in the context of each case. It may be that portions of documents, rather than whole documents, will be deemed "tainted" and thus "releasable."

**21.** *See In re Special September 1978 Grand Jury (II), supra*, 640 F.2d at 63.

**22.** The lawyer has standing to protect "confidentiality necessary to proper preparation of a case," *In re Grand Jury Proceedings, supra*, 604 F.2d at 801 n.4; that is, that degree of privacy necessary to function as an effective advocate. *See Hickman v. Taylor, supra*, 329 U.S. at 514–15, 67 S.Ct. at 395 (Jackson, J., concurring). The client, "the person paying for that work," also has a "deep concern" both in maintaining that degree of privacy, *see In re Grand Jury Proceedings, supra*, 604 F.2d at 801, and in "preventing disclosures about his case." *See In re Special September 1978 Grand Jury (II), supra*, 640 F.2d at 63.

**23.** Lawyers, of course, are always subject to disciplinary proceedings, if not criminal or civil malpractice sanctions, for malfeasance in the conduct of their legal affairs. Thus, disclosure is not the sole available remedy for a breach of a professional duty, and may in fact bear so little relationship to the underlying breach as to be inappropriate as a remedy. In this case, of course, if a violation of legal standards occurred, it lay in the attorney's exclusion of the opposing party and his counsel from a meeting; disclosure of what went on at that meeting to that opponent, the appellant in this FOIA action, would therefore seem an appropriate remedy.

**24.** A client's interest in non-disclosure would be illegitimate, of course, if he knowingly instigated or participated in the conduct which constituted the breach of duty. In some cases, the extent to which a client should be allowed to benefit from unprofessionally obtained information may also be questioned; such benefits, in some cases, may not be deemed a "legitimate" secrecy interest.