Claire BRITT, a/k/a Claire
Freidus, Plaintiff,

v.

INTERNAL REVENUE SERVICE,
Defendant.

Civ. A. No. 77–1325.

United States District Court,
District of Columbia.

Sept. 28, 1982.

Alan Dranitzke, Marshall Perlin, New York City, for plaintiff.

Edward J. Snyder, J. Brian Ferrel, Patricia A. Scott, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

SIRICA, District Judge.

This matter is before the Court on the cross-motions of the parties for summary

judgment. The underlying cause of action has been brought pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (1976) seeking disclosure of certain Internal Revenue Service records.

In its original answer to the complaint, the Internal Revenue Service (IRS) asserted that the records at issue or portions thereof were protected from disclosure pursuant to exemptions (b)(3), (b)(5), and (b)(7)(A) of the Freedom of Information Act. During the course of these proceedings, the Court granted partial summary judgment to the plaintiff with respect to the (b)(7)(A) exemption claim and subsequently, the IRS waived its (b)(5) exemption claim.

As such, the IRS was left with only its (b)(3) exemption claim as a basis for not releasing the undisclosed materials. That exemption permits the government to withhold material

> specifically exempted from disclosure by statute, provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

Relying upon this provision, the IRS asserted that the material at issue was tax return information protected from disclosure by section 6103 of the Internal Revenue Code, 26 U.S.C. § 6103 and that section 6103 was an exempting statute within the meaning of exemption (b)(3). The plaintiff did not dispute that section 6103 was an exemption (b)(3) statute and in its Memorandum and Order of June 13, 1979, the Court specifically found it to be such a statute, then proceeded accordingly in its review.

After the decision in *Zale v. Internal Revenue Service*, 481 F.Supp. 486 (D.D.C.1979), however, the IRS altered its previous position to assert that section 6103 operated independently of the Freedom of Informa-

tion Act as the sole standard governing disclosure of tax return information.[1] Under this view, the Court's review would be confined to the narrow scope provided under the Administrative Procedure Act.

Nevertheless, the Court is not persuaded that it should abandon its earlier finding that section 6103 is an exempting statute within the meaning of exemption (b)(3) and concludes that its review should proceed within the parameters of the Freedom of Information Act and the *de novo* standard of review which it provides.

Section 6103 of the Internal Revenue Code, the statutory provision at issue herein, was completely revised with the enactment of the Tax Reform Act of 1976. That revision set forth a comprehensive scheme for regulating the release of tax returns and information collected to determine tax liability. *Chamberlain v. Kurtz*, 589 F.2d 827, 833–34 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). The revised section 6103 generally specifies that tax returns and information collected with regard to establishing the existence or amount of tax liability are to be confidential and outlines the circumstances under which information may be released to various parties including the taxpayer. *See* 26 U.S.C. § 6103 (1976).

The defendant suggests that this comprehensive revision rendered section 6103 irreconcilable with the provisions of the Freedom of Information Act, and, as such, Congress must have intended for section 6103 to stand alone as the sole standard governing the disclosure of tax return information.

The approach taken in recent decisions of this circuit suggest that our Court has not had any difficulty reconciling the two statutes. For example, in *Moody v. Internal Revenue Service*, 654 F.2d 795 (D.C.Cir. 1981), the Court had no trouble applying the Freedom of Information Act to review

---

**1.** *But see Tigar & Buffone v. CIA* [1981 Transfer Binder] Fed. Taxes (P–H) (47 A.F.T.R.2d) 81–1310 (D.D.C. Feb. 28, 1981) (Parker, J.) (questioning *Zale* interpretation). *See also* Note, *Zale Corporation v. Internal Revenue*

*Service: Turmoil in the Disclosure Scheme For Tax Return Information*, 10 Cath.U.L.Rev. 675 (1981); Comment, *Applying the Freedom of Information Act to Tax Return Information*, 69 Geo.L.J. 1283 (1981).

a trial court decision which upheld a determination by the IRS that certain records constituted non-disclosable return information. In doing so, the Court cited *Chamberlain v. Kurtz* with approval for the proposition that "section 6103 of the Internal Revenue Code is a statute exempting material from disclosure within the meaning of exemption 3 of the FOIA [Freedom of Information Act]". 654 F.2d at 797 n.4. The *Moody* court also observed as a general matter that tax return information "is exempt from disclosure *under the FOIA.*" (emphasis added). *Id.* at 797. The Court then proceeded on to the issue of the segregability of the documents at issue therein.

In view of the *Moody* decision, this Court finds it difficult to proceed in the present case under the assumption that section 6103 is the sole standard governing the disclosure of tax return information for two reasons. First, by stating that information is exempt from disclosure under the Freedom of Information Act pursuant to section 6103, which is specifically identified as an exemption (b)(3) statute, the *language* of the *Moody* decision suggests that section 6103 is not an independent provision, but instead should be read in light of the Freedom of Information Act. Second, the Court's having approached the matter under the Freedom of Information Act without serious difficulty effectively demonstrates, as a practical matter, that the two statutes can be reconciled for purposes of review.

Further support for this position is evidenced in another recent decision of this circuit in which the Freedom of Information Act was applied to section 6103, that is, *Neufeld v. Internal Revenue Service,* 646 F.2d 661 (D.C.Cir.1981). There, the Court found it necessary to address the definition of "return information" as used in section 6103 for "purposes of determining the scope of Exemption 3," and came to the conclusion that material which did not identify a taxpayer was not section 6103 "return information" and "thus *subject to disclosure under the FOIA.*" *Id.* at 665. (emphasis added) Once again, this specific language applying the Freedom of Information Act to the issue of the withholding of tax re-

turn information appears to run contrary to the defendant's suggestion that the Act plays no role in such a determination. Moreover, because the Court determined the scope of exemption (b)(3) by defining the provisions of section 6103 relating to return information, it does not appear that there were any significant practical problems in reconciling the two statutes. Indeed, the Court's decision demonstrates that the Freedom of Information Act provides a workable framework for withholding return information in conjunction with section 6103.

But even apart from the assumptions implicit in the language and approach of these decisions, substantive analysis of the issue leads to the conclusion that section 6103 should not be the sole standard governing disclosure of tax return information and that it can be reconciled with the Freedom of Information Act. To begin with, there is little dispute that section 6103 satisfies the requirements necessary to qualify as an exempting statute within the meaning of exemption (b)(3) of the Freedom of Information Act. As noted previously, our Court has identified section 6103 as a statute exempting material from disclosure within the meaning of exemption (b)(3) of the Freedom of Information Act. *Moody v. Internal Revenue Service,* 654 F.2d at 797 n.4. In doing so, it cited with approval *Chamberlain v. Kurtz,* 589 F.2d at 838–39, a well-reasoned Fifth Circuit decision which dealt specifically with the question of whether section 6103 established particular criteria for withholding or referred to particular types of matters withheld so as to satisfy the requirements of part B of exemption (b)(3). After a thorough analysis of section 6103, the Court came to the conclusion that it did satisfy those requirements and qualified as an exempting statute within the meaning of part B of the exemption. 589 F.2d at 840. Similarly, an earlier, well-reasoned decision in *Fruehauf v. Internal Revenue Service,* 566 F.2d 574 (6th Cir. 1977) reached the same conclusion with respect to part A of exemption (b)(3), concluding that section 6103 contained a mandatory require-

ment as to the withholding of tax return information which left no discretion to the agency on the issue of disclosure. Thus it appears that section 6103 is certainly capable of being applied to exemption (b)(3) as an exempting statute.

This being the case, the question arises why section 6103 should not be so applied. As regards any particular directives from Congress on this issue, the Court notes that neither the language nor legislative history of section 6103 contains any specific statement indicating that section 6103 was to operate independently of the Freedom of Information Act. Of course, if section 6103 and exemption (b)(3) were irreconcilable, such silence might lend support to defendant's position in light of the Court's obligation to construe statutes harmoniously, *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1972), and section 6103, a later more specific provision than exemption (b)(3), would have to be given effect. The Court, however, for the reasons set forth in this Memorandum, finds that section 6103 and exemption (b)(3) are *not* in conflict and can indeed be reconciled.

In fact, in this instance, the silence in the language and legislative history of section 6103 actually weigh against it being viewed as a provision acting independently of the Freedom of Information Act. One reason for this is to be found in the treatment accorded by Congress to a provision which accompanied section 6103 in the Tax Reform Act, more specifically, section 6110 of the Internal Revenue Code, 26 U.S.C. § 6110. This provision, immediately preceding section 6103 in the Tax Reform Act,[2] sets forth a comprehensive scheme governing the disclosure of written tax determinations. Congress, wishing to exclude section 6110 from the coverage of the Freedom of Information Act, made known its intention by adding a specific provision to the effect that section 6110 was to be the exclusive remedy in cases where disclosure of written

determinations was sought. *See* 26 U.S.C. § 6110(*l*). One can conclude from this action that in order to prevent the application of the Freedom of Information Act, Congress believed it advisable to add a specific provision guaranteeing exclusivity for section 6110.

In sharp contrast to section 6110, Congress made no mention in section 6103 of it being an exclusive provision to which the Freedom of Information Act would not apply. This being the case there is a strong indication that Congress did not intend section 6103 to operate independently of the Freedom of Information Act. Otherwise, it would have explicitly expressed that intention by including an exclusivity provision as it did in the accompanying section 6110.

This conclusion is all the more compelling when one considers that prior to the Tax Reform Act, the Freedom of Information Act had been applied to section 6103. If the Freedom of Information Act is now to be considered not applicable to section 6103 because of the Tax Reform Act, the latter must have effectively repealed the former insofar as its application to section 6103 is concerned. However, because the language and legislative history of the Tax Reform Act contain no specific statements to the effect that the Freedom of Information Act does not apply to section 6103, that conclusion would have to be arrived at by implication. In this regard, the Court notes that repeals by implication are disfavored, *United States v. Continental Tuna,* 425 U.S. 164, 168–69, 96 S.Ct. 1319, 1322–23, 47 L.Ed.2d 653 (1976) and the heavy burden of demonstrating such a repeal, *Amell v. United States,* 384 U.S. 158, 165–66, 86 S.Ct. 1384, 1388–89, 16 L.Ed.2d 1445 (1966), has not been met in this case.

Furthermore, when Congress made section 6110 the exclusive governing standard for the disclosure of written determinations, it decided to set forth in that section the practical procedures governing actual disclosure, apparently because the proce-

---

**2.** Section 6110 of the Internal Revenue Code was added with the enactment of the Tax Reform Act of 1976. It immediately preceded

section 1202 of the Act which became section 6103 of the Internal Revenue Code, the provision at issue herein.

dures provided by the Freedom of Information Act would no longer be available. In this regard, the procedures which were provided in section 6110 were made to parallel those found in the Freedom of Information Act. For example, it establishes similar exemptions, provides for *de novo* review by the Courts, places the burden of justification upon the government to withhold, and sets timetables for disclosure.

In view of the treatment accorded section 6110 when the Freedom of Information Act was rendered inapplicable, it appears that providing similar procedures for section 6103 would have been more consistent with a congressional intention that the Freedom of Information Act no longer apply to section 6103. Similar statutory procedures governing the release of information were not provided in section 6103, suggesting that the Freedom of Information Act and its procedures should still apply. Moreover, the ability of the Freedom of Information Act to provide a procedural mechanism for disclosure under section 6103 indicates that, rather than being in conflict as the defendant asserts, the two statutes complement each other.

The Court's analysis must also consider the respective objectives of the Freedom of Information Act and section 6103 in determining whether the two statutes are capable of reconciliation. On this point, the Court perceives no significant conflict and in fact, finds the objectives of the section 6103 and the applicable provision of the Freedom of Information Act to be consistent.

The legislative history of section 6103 indicates that it was enacted primarily to regulate and restrict access to tax returns and return information by the many government agencies and bodies that routinely had access to such information under the prior provision. *See Chamberlain v. Kurtz,* 589 F.2d at 835; S.Rep.No.938, 94th Cong. 2d Sess., pt. I, 315–18, *reprinted in* [1976] U.S.Code Cong. & Admin.News, 3439, 3744–47. As such, it does have a purpose relating to the confidentiality of tax records, and, of course, this is not identical

with the general purpose of the Freedom of Information Act, which seeks to make information available to the public upon request regardless of need.

In a strict sense it might be pointed out that because section 6103 was concerned with the availability of tax return information to government agencies and such agencies are not the intended beneficiaries of the Freedom of Information Act, there is not a significant conflict to resolve. This approach, however, does not appear to be necessary because this action is concerned with the application of section 6103 to exemption (b)(3), one of the nine specific statutory *exceptions* to the Freedom of Information Act and its rule of disclosure. Exemption (b)(3) is the exception which gives effect to non-disclosure statutes. Because those statutes which qualify under exemption (b)(3) are explicit non-disclosure statutes evidencing a congressional determination that certain materials be kept in confidence, *see Irons & Sears v. Dann,* 606 F.2d 1215, 1220 (D.C.Cir.1979), exemption (b)(3) must be generally capable of reconciliation with such statutes, including section 6103, whose objective is confidentiality.

Indeed, courts have had no trouble reconciling exemption (b)(3) as an exception to the Freedom of Information Act with a number of statutes whose purpose is the protection of the confidentiality of records. *See, e.g., Irons & Sears v. Dann,* 606 F.2d at 1221–22 (section 122 of the Patent Act, 35 U.S.C. § 122); *Baker v. Central Intelligence Agency,* 580 F.2d 664 (D.C.Cir.1978) (section 6 of the Central Intelligence Agency Act, 50 U.S.C. § 403(g)). See also section 142 of the Atomic Energy Act of 1954, 42 U.S.C. § 2162, which Congress has specifically identified as a statute within the meaning of exemption (b)(3). H.R.Rep.No. 880, 94th Cong. 2d Sess., pt. I, 23, *reprinted in* [1976] U.S.Code Cong. & Admin.News 2183, 2204–05.

As with these other non-disclosure statutes, the purpose of confidentiality intended for section 6103 is obviously not the same as the general objective of the Freedom of Information Act, but it is consistent with

the application of exemption (b)(3) as an exception to the Act. That is because exemption (b)(3) was added to the Freedom of Information Act with non-disclosure statutes such as section 6103 in mind and was intended to allow them continued effect. Illustrative of this fact is the decision in *Neufeld v. Internal Revenue Service,* 646 F.2d at 665, where the scope of exemption (b)(3)'s protection was determined specifically by looking to the definition of confidential return information provided in section 6103. In other words, exemption (b)(3) provided a vehicle through which section 6103's provisions relating to the confidentiality of records were given effect.

As such, there is no real significant conflict between the two statutory provisions and it is apparent that section 6103's objective of confidentiality will not be negated or diminished by applying it to exemption (b)(3) of the Freedom of Information Act. Instead, *the principal effect of such action will be procedural,* going to the process of review and the scope of the Court's role in that review. And in this regard, even though the Court will proceed *de novo,* if a determination of the IRS to withhold information pursuant to section 6103 is found to be sound, it will be given full effect by the Court in the same manner as if review had proceeded under the narrower standard of the Administrative Procedure Act suggested by the defendant.

Finally, the Court notes that section 6103 has been applied to exemption (b)(3) in a number of decisions and those decisions, along with the accompanying extensive body of law which has been developed to implement the Freedom of Information Act provide an effective, identifiable practical framework which the courts can use in dealing with questions involving the withholding of tax return information. To depart from the example of those decisions and that body of law does not seem advisable or warranted in the absence of a specific directive from Congress. As noted previously, the real issue here is the scope and manner of the Court's review, not whether section 6103 will remain viable. While it may be less time consuming for the Court to review the action of the IRS without regard to the Freedom of Information Act, such a decision should be governed by legal considerations, rather than convenience.

Accordingly, in view of: (1) the recent decisions in this circuit dealing with the issue of tax return information; (2) the recognition of section 6103 as an exempting statute within the meaning of exemption (b)(3) of the Freedom of Information Act; (3) the failure of Congress to specifically exclude section 6103 from the coverage of the Freedom of Information Act; (4) the lack of significant conflict between the objectives of section 6103 and exemption (b)(3) of the Freedom of Information Act; (5) the applicability of exemption (b)(3) to a number of similar non-disclosure statutes; and (6) the existing body of law facilitating review under the Freedom of Information Act, the Court finds that section 6103 does not operate independently of the Freedom of Information Act as the sole standard governing disclosure of tax returns and return information, but instead should function as applied to exemption (b)(3) of the Freedom of Information Act. The appropriate standard of review in this action is thus provided by the Act.

The Court having determined that its review is governed by the provisions of exemption (b)(3) of the Freedom of Information Act in conjunction with section 6103 of the Internal Revenue Code, must now address that review.

■ The plaintiff is a taxpayer who seeks disclosure of a 509-page document entitled "Action Memorandums—Supporting Statement." This document was prepared by the Internal Revenue Service in connection with certain Tax Court cases involving the plaintiff, her husband, two other individuals and a substantial number of corporations and partnerships for the calendar years 1941–1948. After these cases were settled the document was subsequently utilized in certain related Tax Court cases covering the taxable years 1949–1961 involving the same parties and entities. These cases were decided in the Tax Court in 1979.

The defendant has released 142 pages of the document in question, but has withheld all or parts of the remaining pages on the grounds that the information contained therein is return information which is protected from disclosure by the provisions of section 6103 in accordance with exemption (b)(3). In this regard, section 6103 does provide as a general rule that return information is confidential and should not be disclosed, with such return information being described as:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A).

Section 6103 also specifically provides that return information "does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." *Id.*

Because the IRS has the burden of demonstrating that non-disclosure pursuant to section 6103 as applied to exemption (b)(3) is proper, *see* 5 U.S.C. § 552(a)(4)(B), it must prove two things to justify its decision to withhold. First, it must show that the material contained in each of the pages or portions thereof which were withheld satisfies one of the definitions provided in the description of return information set forth in section 6103(b)(2)(A). Second, it must also show that the information contained in each of the withheld pages or portions thereof includes only information that directly or indirectly identifies a particular taxpayer. *See Neufeld v. Internal Revenue Service,* 646 F.2d at 665.

Furthermore, even if the IRS demonstrates that the information found on a particular page of the document satisfies these two requirements so as to constitute return information, that information will nevertheless be subject to disclosure if the party seeking such disclosure is found to have a "material interest" in the information. *See* section 6103(e)(6) and (e)(1). The circumstances under which a party will be considered to have a material interest are set forth in section 6103(e)(1). The situations which could possibly apply in the present instance appear to be those which permit disclosure to:

> (A) in the case of the return of an individual—
>
> > (i) that individual,
> >
> > . . . .
>
> (B) in the case of an income tax return filed jointly, either of the individuals with respect to whom the return is filed;
>
> (C) in the case of the return of a partnership, any person who was a member of such partnership during any part of the period covered by the return;
>
> (D) in the case of the return of a corporation or a subsidiary thereof—
>
> > (i) any person designated by resolution of its board of directors or other similar governing body,
> >
> > (ii) any officer or employee of such corporation upon written request signed by any principal officer and attested to by the secretary or other officer,
> >
> > (iii) any bona fide shareholder of record owning 1 percent or more of the outstanding stock of such corporation,
> >
> > . . . .
> >
> > (vi) if the corporation has been dissolved, any person authorized by applicable State law to act for the corporation or any person who the Secretary finds to have a material interest which will be affected by information contained therein . . . .

Cognizant of what constitutes "return information" and a "material interest" under section 6103 as discussed above, the Court

has attempted to review the determination of the IRS that the remaining undisclosed pages of the document in question are properly withheld. As a means of facilitating that review, the Court has ordered the IRS to submit a detailed itemization and indexing of the document as provided in *Vaughn v. Rosen,* 484 F.2d 820, 826–28 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), and a number of subsequent decisions in this circuit. As stated in *Mead Data Central, Inc. v. Department of the Air Force,* 566 F.2d 242, 251 (D.C.Cir.1977), the Court requires "that when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."

Unfortunately, the IRS has yet to file an appropriate *Vaughn* Index to assist the Court in its review. While the Court has made known its dissatisfaction and attempted to provide guidance to the IRS on submitting a proper Index in several previous orders, at this late date in the proceedings it still cannot be said that the Index provided by the IRS is adequate. Accordingly, the Court will identify the information it believes should be included in the Index to assist it in its review, and give the IRS an opportunity to file a new Index addressing the Court's concerns, failing which sanctions will be addressed.

The present Index merely provides a brief description of the four segments into which the document is divided (action memoranda, supporting statements, exhibits, and audit statements) and states for each page whether all or part of the page is considered exempt from disclosure under exemption (b)(3). Believing this to be insufficiently specific, the Court will require the following information to be included in an amended Index as to *each* undisclosed page or portion of a page comprising the document.

(1) Whether the IRS considers the undisclosed material on that particular page to be return information within the meaning of section 6103(b)(2)(A).

(2) If so, as set forth in section 6103(b)(2)(A), what particular type of return information does the withheld material on that page represent. For example, does it constitute a taxpayer's identity, the nature of his income, data furnished to the IRS with respect to a return, data prepared with respect to the determination of the existence of liability, or some other described return information.

(3) Whether the withheld information on each particular page consists only of data which could be associated with, or otherwise identify directly or indirectly, a particular taxpayer, and the specific reasons supporting such a conclusion.

(4) If not, whether this data can be meaningfully segregated so as to permit the non-identifying material to be disclosed and the specific reasons supporting this conclusion.

In addition, it appears that the Index should address more specifically whether the plaintiff has a material interest in any of the undisclosed information contained on a particular page of the document. In this regard, it is to be noted that the document in question involves information relating to a number of individuals, partnerships, and corporations. The IRS has determined that the plaintiff has a material interest in 34 of these entities and has submitted a list identifying them. The plaintiff, however, claims to have a material interest in as many as fifty of the entities addressed in the document. Nevertheless, it appears as a matter of practical procedure that before the IRS should be asked to address the issue of whether the plaintiff has a material interest in entities other than the 34 which it has conceded, the plaintiff should specifically identify those entities in which she believes she has a material interest by name and then discuss the particular material interest in terms of the statute. Therefore, as a preliminary matter, the Court will require the plaintiff to submit a list of those

entities in which she believes she has a material interest accompanied by a memorandum identifying which specific provision of section 6103(e)(1) provides that material interest and the reasons supporting such a conclusion.

• The IRS will then be given an opportunity to address the particular claimed material interest as to each specific entity in a responsive memorandum which shall accompany its amended Index.[3] With respect to the Index itself, for each page or portion of a document page, the IRS shall explain with specificity why the information contained therein does not relate to the entities in which it concedes the plaintiff has a material interest. In addition, it will also state whether the information on the particular page related to an entity among the additional group in which the plaintiff claims a material interest, though the actual entity, of course, need not be identified.

3. Regardless of the plaintiff's action, the defendant must file a timely amended Index.