**CHURCH OF SCIENTOLOGY OF CALIFORNIA, Plaintiff–Appellant,**

v.

**UNITED STATES POSTAL SERVICE et al., Defendants–Appellees.**

No. 79–3655.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1980.

Decided Dec. 15, 1980.

Barry Leigh Weissman, Weissman & Weinstein, P. C., Beverly Hills, Cal., for plaintiff–appellant.

Alan L. Ferber, Washington, D. C., argued, for defendants–appellees; Leonard Schaitman, Alan L. Ferber, Dept. of Justice, Washington, D. C., on brief.

Before WRIGHT and TANG, Circuit Judges, and HANSON,* District Judge.

TANG, Circuit Judge:

Church of Scientology (the Church) appeals from the district court's refusal to

---

* Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

order the United States Postal Service to comply with the Church's Freedom of Information Act (FOIA) request. The district court decision came after this court remanded the case for consideration of the effect of the 1976 FOIA amendments on the Postal Service's claimed exemption.[1] The Church contends that the FOIA fully applies to the Postal Service and that the Postal Reorganization Act's investigatory files exemption, 39 U.S.C. § 410(c)(6), is not an exempting statute within the meaning of the amended FOIA, 5 U.S.C. § 552(b)(3). We agree, and reverse the judgment of the district court.

## I.

### Facts

The Postal Reorganization Act, 39 U.S.C. §§ 101–5604, extended the reach of the FOIA to the newly created Postal Service. In accordance with the FOIA, 5 U.S.C. § 552(a)(3),[2] the Church sought to obtain any records in possession of the Postal Service that concerned the Church. The Postal Service released numerous documents to the Church, but withheld certain materials, compiled during its investigations of possible criminal offenses.

Unconvinced that the documents were properly withheld, the Church brought a district court action to compel disclosure. After an *in camera* inspection of the documents, the district court concluded that the files had been compiled for law enforcement purposes. The court granted summary judgment to the Postal Service, holding that the investigatory files were specifically exempted from disclosure by the FOIA, 5 U.S.C. § 552(b)(3) (Exemption 3),[3] which incorporates the postal exemption, 39 U.S.C. § 410(c)(6).[4]

On appeal, this court remanded to the district court to determine whether section 410(c)(6) qualified as an exempting statute within the meaning of the amended version of Exemption 3. 593 F.2d at 904. The district court was also instructed that if it determined that section 410(c)(6) was such an exempting statute, it should then decide whether the Postal Service had complied with its own regulation, found at 39 C.F.R. § 265.6(c),[5] and whether the documents were properly withheld under FOIA Ex-

1. *See Church of Scientology v. United States Postal Service*, 593 F.2d 902 (9th Cir. 1979).

2. Section 552(a)(3) provides in pertinent part:
   (a)
   *    *    *    *    *    *
   (3) ... each agency, upon any request for records which (A) reasonably describes such records and (B) is made in accordance with published rules ... shall make the records promptly available to any person.

3. See footnote 7 and accompanying text *infra*.

4. Section 410(c)(6), 39 U.S.C., reads as follows:
   (c) Subsection (b)(1) of this section [making FOIA § 552 applicable to the Postal Service] shall not require the disclosure of—
   *    *    *    *    *    *
   (6) investigatory files, whether or not considered closed, compiled for law enforcement purposes except to the extent available by law to a party other than the Postal Service.

5. Section 265.6(c), 39 C.F.R., provides:
   (c) *Investigatory records.* (1) Investigatory files compiled for law enforcement purposes, whether or not considered closed, are exempt by statute from mandatory disclosure except to the extent otherwise available by law to a party other than the Postal Service, 39 U.S.C. § 410(c)(6). As a matter of policy, however, the Postal Service will normally make investigatory records available upon request unless the production of these records would:
   (i) Interfere with enforcement proceedings,
   (ii) Deprive a person of a right to a fair trial or an impartial adjudication,
   (iii) Constitute an unwarranted invasion of personal privacy,
   (iv) Disclose the identity of a confidential source, and, in the case of a record compiled by the Postal Inspection Service in the course of a criminal investigation or of a lawful national security intelligence investigation, confidential information furnished only by the confidential source,
   (v) Disclose investigative techniques and procedures, or
   (vi) Endanger the life or physical safety of law enforcement personnel.
   (2) Authority to disclose investigatory records to persons outside the Postal Service must be obtained from the Chief Postal Inspector, United States Postal Service, Washington, D. C. 20260, or his designee.

emptions 5 and 7,[6] the alternative grounds claimed by the Postal Service. *Id.* at 905 n.7.

The parties simultaneously filed motions for summary judgment in the district court, addressing the issues raised in the remand order, reviving old arguments, and formulating new ones. The district court granted the Postal Service's motion for summary judgment finding that (1) section 410(c)(6) constitutes an exempting statute under the amended FOIA Exemption 3; (2) the information was properly withheld as material "compiled for law enforcement purposes;" and (3) the Postal Service regulations are permissive and thus do not require disclosure. The Church again appeals.

## II.

*Section 410(c)(6) as an Exempting Statute*

The Church argues that the district court erred in holding that section 410(c)(6) is an exempting statute within the meaning of amended FOIA Exemption 3. As originally enacted, Exemption 3 simply shielded material "specifically exempted from disclosure by statute." In 1976, Congress narrowed Exemption 3 to cover a statute only if it "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding

or refers to particular types of matters to be withheld . . . ."[7]

The legislative purpose of this amendment has been thoroughly discussed elsewhere. For example, in *Irons & Sears v. Dann*, 606 F.2d 1215, 1219–20 (D.C.Cir. 1979), *cert. denied, Irons & Sears v. Commissioner of Patents & Trademarks*, 444 U.S. 1075, 100 S.Ct. 1021, 62 L.Ed.2d 757 (1980), the court summed up the legislative history by stating:

Congress' goal was to overrule legislatively the Supreme Court's decision in *Administrator, FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), which had given an expansive reading to the version of Exemption 3 then in force. The amended text and its legislative history make clear that Congress did not want the exemption to be triggered by every statute that in any way gives administrators discretion to withhold documents from the public. On the contrary, . . . [i]t provided that only explicit nondisclosure statutes that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify under the exemption (footnotes omitted).[8]

"Congress did not, however, itself undertake to sort out those nondisclosure statutes

---

**6.** Exemption 5, 5 U.S.C. § 552(b)(5), and Exemption 7, 5 U.S.C. § 552(b)(7), provide as follows:

(b) This section does not apply to matters that are—

\* \* \* \* \* \*

(5) inter–agency or intra–agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

\* \* \* \* \* \*

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential

information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel . . . .

**7.** The amendment was part of the Government in the Sunshine Act, Pub.L. No. 94–409, 90 Stat. 1241, 1247 (1976).

**8.** In *Robertson*, the Supreme Court held that section 1104 of the Federal Aviation Act of 1958, 49 U.S.C. § 1504, was an exempting statute within the meaning of Exemption 3. Section 1104 permitted the FAA administrator to withhold certain reports when the administrator determined that disclosure "would adversely affect" the subject of the report and was not "in the interest of the public." The *Robertson* court reasoned that because there was no indication that Congress intended to exclude any existing nondisclosure statute from Exemption 3. all existing laws permitting confidentiality should stand.

that it comprehended as remaining within the exemption from those that it intended to exclude. Instead, it left that task for the courts . . . ." *American Jewish Congress v. Kreps,* 574 F.2d 624, 628 (D.C.Cir.1978).

The Postal Service apparently concedes that section 410(c) fails to meet the requirements of subsection (A) of Exemption 3 because it gives the agency complete discretion to grant or withhold investigatory files by providing that the section incorporating the FOIA "shall not require disclosure" in certain cases.[9] It contends, however, that the (c)(6) provision need satisfy only one of the two subsections in order to qualify as an FOIA exempting statute, and that it in fact meets the subsection (B) criteria.

### a. The Legal Standard

Subsection (B) necessarily contemplates some exercise of administrative discretion, "but its unmistakable thrust, like that of subsection (A), is to assure that the basic policy decision on governmental secrecy be made by the Legislative rather than the Executive branch." *Id.* The Postal Service argues that the "investigatory files compiled for law enforcement purposes" protected by (c)(6), are "particular types of matters to be withheld," and therefore satisfy subsection (B). It points out that (c)(6) requires no "guesswork" and sets up no "indefinite delineation of categories." Specifying such a concrete category, the Postal Service suggests, is all that subsection (B) requires.

This Postal Service premise, however, rests on too simplistic an analysis of subsection (B) and its judicial gloss. In *American Jewish Congress,* the District of Columbia Circuit held that section 7(c) of the Export Administration . Act, 50 U.S.C. App. § 2406(c), was not an exempting statute under Exemption 3. That statute prohibited disclosure of "information . . . deemed

confidential or with reference to which a request for confidential treatment is made by the person furnishing such information," unless the agency decides that withholding the information, "is contrary to the national interest." In determining that the requirements of neither subsection (A) nor (B) were satisfied, the court stated:

> Nondisclosure is countenanced by Subsection (B) if; but only if, the enactment is the product of congressional appreciation of the dangers inherent in airing particular data and incorporates a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw.

574 F.2d at 628–29.

In other words, the policy that the legislature, not the executive, should make decisions about secrecy is frustrated if a statute includes "within its sweep provisions reflecting no more than a vague apprehension that an agency might someday fall heir to sensitive information." *Id.* at 628.

The *American Jewish Congress* court, then, suggests two necessary considerations in deciding whether a given "criterion" or enumerated matter satisfies subsection (B). First, a court must consider the underlying congressional intent to exempt material from the FOIA. Somehow Congress must manifest its appreciation of the specific dangers of disclosure, and thus its intent to exempt, or subsection (B) goes unsatisfied. Second, a court must analyze, as it does under subsection (A), the amount of discretion left to the agency. For, as the court noted, statutes setting forth very general benchmarks for secrecy "in fact delegate to administrators the entire burden of identifying the problems disclosure might generate" and thus "do not satisfy subsection (B)'s requirement that Congress have articulated 'particular criteria.'" *Id.* at 629.

---

**9.** There is no doubt that the two subsections of Exemption 3 are separate and distinct. *See Irons & Sears,* 606 F.2d at 1220; *Lee Pharmaceuticals v. Kreps,* 577 F.2d 610, at 616 n.8 (9th Cir. 1978); *American Jewish Congress,* 574 F.2d at 628. "Subsection (A), on its face, is too rigorous to tolerate any decisionmaking on the

administrative level. It embraces only those statutes incorporating a congressional mandate of confidentiality that, however general, is 'absolute and without exception'" (footnotes omitted). *American Jewish Congress,* 574 F.2d at 628.

Contrary to the Postal Service's contention, nothing in the line of cases that find certain provisions are exempting statutes within the meaning of Exemption 3 suggests otherwise. For example, in *Lee Pharmaceuticals v. Kreps*, 577 F.2d 610 (9th Cir. 1978), this court examined section 122 of the Patent Act, 35 U.S.C. § 122, in light of FOIA Exemption 3. Section 122 provides that patent applications must not be released unless the applicant gives authority, release is necessary to carry out other congressional provisions, or the Commissioner determines it is necessary because of "special circumstances." In holding that section 122 is a subsection (B) exempting statute, the court looked to both legislative intent and degree of discretion. It stressed that nothing in the legislative history supported the view that Congress intended to exclude section 122 from FOIA coverage. 577 F.2d at 617. In fact, it found to hold otherwise would mean "destruction of the patent system." *Id. Accord Irons & Sears v. Dann*, 606 F.2d at 1221. Further, although the court recognized that subsection (B) "could provide for limited discretionary disclosure," in quoting *Sears v. Gottschalk*, 502 F.2d 122, 126–27 (4th Cir. 1974), *cert. denied sub nom., Sears v. Dann*, 422 U.S. 1056, 95 S.Ct. 2680, 45 L.Ed.2d 709 (1975), the court suggested that the absence of guidelines for the Commissioner's exercise of discretion "would not be determinative" because "applications for patents" is a narrow enough class of items. *Id.* at 616 n.8.

Likewise, in *Founding Church of Scientology v. National Security Agency*, 610 F.2d 824 (D.C.Cir.1979), the District of Columbia Circuit held that a provision involving the National Security Agency satisfied subsection (B), but not (A). In so holding, the court stated that an examination of the statute "and its legislative history confirms the view that it manifests a 'congressional appreciation of the dangers inherent in air-

ing particular data,' and thus satisfies the strictures of Subsection (B) (footnote omitted)." 610 F.2d at 827–28.

### b. *Legislative Intent*

In first turning to the question whether the legislature intended to exempt Postal Service investigatory files from FOIA disclosure, we do not find that Congress appreciated the dangers inherent in disclosing "investigatory files", thereby formulating criteria "whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw." [10] *American Jewish Congress*, 574 F.2d at 628–29. To the contrary, in amending FOIA Exemption 7, Congress made strong statements about the hazards of agencies withholding, *carte blanche*, any information thrust into an "investigatory file."

The legislative history of Exemption 7, then, provides persuasive evidence of the congressional attitude toward exemption of investigatory materials. As originally enacted, Exemption 7 simply permitted nondisclosure of "investigatory files compiled for law enforcement purposes except to the extent available by law to a private party." 80 Stat. 251 (1966). The only difference between the original Exemption 7 and the (c)(6) postal exemption is that the latter additionally covers investigatory files, "whether or not considered closed." [11] In 1974, FOIA Exemption 7 was rewritten to permit the nondisclosure of "investigatory *records* compiled for law enforcement purposes, but only to the extent that producing such *records*" would involve one of six enumerated dangers (emphasis added). [12]

The Supreme Court thoroughly reviewed the legislative history and purpose of Exemption 7 in *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159. [13] In proposing the amend-

---

10. Moreover, it certainly could not be said, as it was in *Lee Pharmaceuticals* and *Irons & Sears*, that the structure of the agency would be jeopardized by not finding that section 410(c)(6) is an exempting statute.

11. See footnote 4 *supra*.

12. See footnote 6 *supra*.

13. In *Robbins*, the court held that Exemption 7(A) entitled the NLRB to withhold from disclosure the statements of witnesses the Board

ment, "Senator Hart emphasized his concern that 'material cannot be and ought not be exempted merely because it can be categorized as an investigatory file compiled for law enforcement purposes.'" *Id.* at 227, 98 S.Ct. at 2319, *quoting* the Freedom of Information Act Source Book, Sen. Doc. 93–82, Subcommittee on Administrative Practice & Procedure, Senate Judiciary Committee, 93rd Cong., 2d Sess. 332 (1974). As Congressman Moorehead explained to the House, this concern derived from "'recent court decisions' that had applied the exemptions to investigatory files 'even if they ha[d] long since lost any requirement for secrecy.'" *Id.* at 230, 98 S.Ct. at 2321, *quoting* H.R.Rep.No.92–1419, 92d Cong., 2d Sess. (1972).[14] Such cases, "in Senator Hart's view, erected a 'stone wall' against public access to any material in an investigatory file." *Id.* at 229, 98 S.Ct. at 2320.[15]

In originally enacting Exemption 7, then, Congress recognized that "law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their case." *Id.* at 224, 98 S.Ct. at 2318. The thrust of congressional concern and its purpose in its amendment of Exemption 7, however, "was to indicate that 'with passage of time, . . . when the investigation is all over and the purpose and point of it has expired, it would no longer be an interference with enforcement proceedings

and there ought to be . . . disclosure.'" *Id.* at 232, 98 S.Ct. at 2322.

The Postal Service argues that the congressional concern that led to amendment of Exemption 7 should have no bearing here. Rather, it suggests that by virtue of its "special relationship to the Federal Government," the Postal Service enjoys the power to preempt the FOIA. This special relationship, the Postal Service contends, is manifested by section 410(a), 39 U.S.C., which provides:

> (a) Except as provided by subsection (b) of this section, and except as otherwise provided in this title or insofar as such laws remain in force as rules or regulations of the Postal Service, no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service.

The argument is unconvincing. The Postal Reorganization Act was passed to "[e]liminate serious handicaps that [were then] imposed on the Postal Service by certain legislative, budgetary, financial, and personnel policies that are outmoded, unnecessary, and inconsistent with the modern management and business practices that must be available if the American public is to enjoy efficient and economical postal service . . ." H.R.Rep.No.91–1104, 91st Cong., 2d Sess. 2, *reprinted in* [1970] U.S.Code

---

intended to call at an unfair labor practice hearing.

**14.** Senator Hart specifically named four decisions of the D. C. Circuit: *Weisberg v. U.S. Dept. of Justice*, 489 F.2d 1195 (1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772; *Aspin v. Department of Defense*, 491 F.2d 24 (1973); *Ditlow v. Brinegar*, 494 F.2d 1073, *cert. denied*, 419 U.S. 974, 95 S.Ct. 238, 42 L.Ed.2d 188 (1974); and *Center for National Policy Review on Race and Urban Issues v. Weinberger*, 502 F.2d 370 (1974). *Robbins*, 437 U.S. at 227–28, 98 S.Ct. at 2319–2320.

**15.** As the Court discussed:

Senator Hart believed that his amendment would rectify these erroneous judicial interpretations and clarify Congress' original intent in two ways. First, by substituting the

word "records" for "files," it would make clear that courts had to consider the nature of the particular document as to which exemption was claimed, in order to avoid the possibility of impermissible "commingling" by an agency placing in an investigatory file material that did not legitimately have to be kept confidential. Second, it would explicitly enumerate the purposes and objectives of the Exemption, and thus require reviewing courts to "look[ ] to the reasons" for allowing withholding of investigatory files before making their decisions. The "wooden[ ] and mechanical[ ]" approach taken by the D. C. Circuit and disapproved by Congress would thereby be eliminated.

*Id.* at 229–30, 98 S.Ct. at 2320–2321 (citations omitted).

Cong. & Ad. News, pp. 3649, 3650. In other words, by limiting the applicability of some federal laws, Congress intended to free the service from "shared management" so it could operate its day–to–day affairs in a more "businesslike way." *Id.* at 5, U.S. Code Cong. & Ad. News at 3653. In this effort, Congress surely did not mean to place the Postal Service on a pedestal removed from the reaches of social policy and legislation. To the contrary, Congress envisioned that its fundamental postal reform would place responsibility for "managing the system" in a single place, but "with appropriate safeguards against abuse of that responsibility and appropriate assurances of continued congressional surveillance." *Id.*

The Postal Service cites *Zale Corp. v. United States Internal Revenue Service,* 481 F.Supp. 486 (D.D.C.1979) as support for its theory of independence from the FOIA. In that case, the court held that a statute in the Internal Revenue Code governed despite a conflicting FOIA provision. The case is distinguishable.

In *Zale,* the court emphasized that Congress passed the IRS statute after the FOIA. Further, the court found that "the secrecy of tax returns and related information has long been favored in practice, and it is not surprising that Congress would seek to carve out a special protection for this unique and highly sensitive type of information." *Id.* at 489. Finally, the court noted the elaborate detail of the IRS section, and concluded that no evidence suggested Congress wished to frustrate its "clear purpose and structure." *Id.*

In the case *sub judice,* Congress passed the FOIA amendment after the postal exemption, not before as in *Zale.* And Congress provided a far more detailed structure in Exemption 7 than it had in the (c)(6) postal exemption. Moreover, the express purpose of the IRS statute in *Zale* stood in "sharp contrast to FOIA's stated preference for disclosure to the general public." *Id.* Presumably here the purpose of both statutes is to strike a balance between the public need for information and an agency's legitimate need to preserve confidentiality in its investigations. In any event, no evidence of a contrary purpose has been suggested, and we are unable to divine one.

### c. *Amount of Discretion*

Not only do we find no congressional intent to exempt the Postal Service from the rigors of the FOIA, but we also conclude that section 410(c)(6) provides insufficient specificity to take it out of the impermissible range of agency discretion to make decisions rightfully belonging to the legislature. Unlike the exempting statute in *Lee Pharmaceuticals v. Kreps,* 577 F.2d 610 (9th Cir. 1978), *cert. denied,* 439 U.S. 1073, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979), section 410(c) permits the Postal Service *total* discretion to give or restrict any or all of its investigatory files.[16] Thus, it is of no moment that (c)(6) narrows the range of documents to investigatory files "compiled for law enforcement purposes." Moreover, in amending Exemption 7 to read "investigatory records", Congress has already expressly decided that the term "investigatory files" allows too much agency discretion. Therefore, we hold that section 410(c)(6) is not an Exemption 3 statute.[17]

---

**16.** *See also, Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* —— U.S. ——, —— ——, 100 S.Ct. 2051, 2062–63, 64 L.Ed.2d 766 (1980); *Irons & Sears v. Dann,* 606 F.2d at 1219–1221 (patent statute); *Chamberlain v. Kurtz,* 589 F.2d 827 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979) (tax statute); *Marks v. CIA,* 590 F.2d 997 (D.C.Cir. 1978); and *Seymour v. Barabba,* 559 F.2d 806 (D.C.Cir.1977) (Bureau of Census statute). *Cf. Founding Church of Scientology v. National Security Agency,* 610 F.2d at 828–30 (statute allowing considerable agency discretion found

to be intended by legislature to exempt under subsection (B)).

**17.** The Postal Service urges us to follow an unpublished court Memorandum, *McCloskey v. United States Department of Justice,* No. 77–470 (D.D.C. Nov. 8, 1978), holding that section 410(c) in conjunction with FOIA Exemption 3 affords a statutory exemption to the requested production. The case, however, lacks precedential value and contains no rationale to support its holding.

Because we find section 410(c)(6) is not an Exemption 3 statute, we do not reach the

We reverse the judgment of the district court, but remand for a determination of the remaining issues whether the Postal Service failed to meet its statutory burden of proof,[18] and whether the requested information is exempt from disclosure under FOIA Exemptions 5 and 7.

Reversed and remanded.

Church's other arguments that (1) Congress intended Exemption 3 to preserve only those exemptions in existence in 1966 when the FOIA was enacted; (2) the 1974 amendment of Exemption 7 repealed section 410(c)(6) by implication; and (3) the Postal Service has not complied with its own regulation, 39 C.F.R. § 265.-6(c).

18. Section 552(a)(4)(B) of 5 U.S.C. places the burden on the agency "to sustain its action." The Church relies on the guidelines adopted in *Ray v. Turner*, 587 F.2d 1187 (D.C.Cir.1978), and *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), to support its contention that the Postal Service affidavits failed to provide enough detail for the district court to determine that the Service had met its burden.