Susan B. LONG and Philip H. Long,
Plaintiffs-Appellants,

v.

UNITED STATES INTERNAL REVE-
NUE SERVICE, Defendant-Appellee.

Susan B. LONG and Philip H. Long,
Plaintiffs-Appellants,

v.

BUREAU OF ECONOMIC ANALYSIS,
UNITED STATES DEPARTMENT OF
COMMERCE, Defendant-Appellee.

Nos. 83–3854, 83–3996.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1984.

Decided Sept. 14, 1984.

Stephen K. Strong, Bendich, Stobaugh & Strong, Seattle, Wash., for plaintiffs-appellants.

Jonathan S. Cohen, Michael L. Paup, Dept. of Justice, Washington, D.C., for defendants-appellees.

Before TANG, SKOPIL and CANBY, Circuit Judges.

CANBY, Circuit Judge:

These consolidated cases present the issue of whether computer tapes and other records prepared in connection with the Internal Revenue Service's Taxpayer Compliance Measurement Program are exempted from disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1982), by section 701 of the Economic Recovery Tax Act of 1981 (ERTA), Pub.L. No. 97–34, 95 Stat. 172 (1981) (codified at 26 U.S.C. § 6103(b)(2)). On motion for summary judgment, the district court, 566 F.Supp. 799, held that the tapes and records were exempt from disclosure. Because the district court applied an incorrect standard of review, we reverse and remand to the district court for further proceedings.

I

The Taxpayer Compliance Measurement Program (TCMP) is a continuing series of statistical studies measuring the level of taxpayer compliance with the tax laws. From the data compiled through the TCMP surveys, the IRS has developed a scoring technique, referred to as the discriminate function (DIF) system, by which individual and corporate tax returns having a high tax change potential are identified for the purpose of selecting returns for audit.

In *Long v. IRS*, the Longs seek data tapes from Phases II, III, and IV of the TCMP survey, which are in the possession of the IRS. On an earlier appeal in that

case, we held that TCMP computer tapes were "records" subject to the disclosure provisions of FOIA, and that these tapes were not exempt from disclosure under the so-called Haskell amendment to 26 U.S.C. § 6103(b)(2) to the extent that their disclosure would not pose a significant risk of indirect identification of taxpayers. *Long v. IRS*, 596 F.2d 362, 367 (9th Cir.1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980). We then remanded the case to the district court to determine whether such a risk existed. *Id.*

In the other case, *Long v. BEA*, the Longs seek copies of TCMP tapes for Phase III, Cycles 1–5, which had been edited to remove taxpayer identifying information and turned over to the Bureau of Economic Analysis to be used for estimating the total national income account. On an earlier appeal in that case, we affirmed a district court injunction ordering release of the tapes. Relying on our earlier opinion in *Long v. IRS*, we held that the BEA failed to establish that release of the tapes would pose a serious risk of indirect identification. *Long v. BEA*, 646 F.2d 1310, 1321 (9th Cir.1931). The Supreme Court, however, granted a stay pending certiorari.

Meanwhile, the Congress added an amendment to the Economic Recovery Tax Act providing that no federal law shall be construed to require the disclosure of standards used, or to be used, for the selection of returns for examination (or data used, or to be used, for determining such standards), "if the Secretary determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws." [1] It is clear from the legislative history of the amendment

that Congress was targeting these two cases.[2] Upon passage of ERTA, the Supreme Court granted certiorari in *Long v. BEA* and remanded the case to us for reconsideration in light of the ERTA amendment. 454 U.S. 934, 102 S.Ct. 468, 70 L.Ed.2d 242 (1981). We in turn remanded to the district court. 671 F.2d 1229 (1982).

On remand the *BEA* case was consolidated with the *IRS* case. The district court held that the ERTA amendment to 26 U.S.C. § 6103(b)(2) qualified as an exemption statute under FOIA exemption 3, 5 U.S.C. § 552(b)(3).[3] Specifically, the district court found that the amendment qualified under Part B of exemption 3, in that the amendment both established particular criteria for withholding and referred to particular matters to be withheld. Turning to the question whether TCMP data tapes fall within the category of documents described in the amendment, the district court limited its "de novo inquiry" under FOIA to "(1) whether the records at issue are 'standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards,' and (2) whether the Secretary or his delegate has in fact determined that disclosure of the records would 'seriously impair assessment, collection, or enforcement under the internal revenue laws.'" Finding that there was no issue of material fact under the first prong and that the Commissioner had in fact made the requisite determination of impairment, the district court concluded that the government had met its burden under the de novo standard of establishing the applicability of the amend-

---

**1.** Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, § 701(a), 95 Stat. 172 (1981).

Nothing in the preceding sentence, or in any other provision of law, shall be construed to require the disclosure of standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards, if the Secretary determines that such disclosure will seriously impair assessment, collection, or enforcement under the internal revenue laws.

26 U.S.C. § 6103(b)(2) (1982).

**2.** *See, e.g.,* H.R.Rep. No. 201, 97th Cong., 1st Sess. 238–39 (1981).

**3.** Exemption 3 of FOIA exempts from disclosure matters that are "specifically exempted from disclosure by statute (other than section 552(b) of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3) (1982).

ment to the TCMP tapes sought by the Longs.

## II

The Longs' primary contention on appeal is that the district court's "de novo" review is not limited, as the district court thought, to determining the factual existence of the Secretary's determination of harm, but rather includes an independent determination of the question of harm. The government takes the position that 26 U.S.C. § 6103 operates independently of FOIA, rendering FOIA's procedural requirements, including the requirement of de novo review, inapplicable. Alternatively, the government argues that section 6103 qualifies as an exemption statute under Part A of 5 U.S.C. § 552(b)(3) and that de novo review of Part A statutes is limited merely to establishing the factual existence of the Commissioner's finding that disclosure would seriously impair tax collection. Thus, the government contends that the district court properly refused to look behind the Commissioner's impairment determination and substitute its judgment for the Commissioner's.

### A. Is Section 6103 Subject to FOIA?

In support of its position, the government urges us to adopt the interpretation given section 6103 by *Zale Corporation v. IRS*, 481 F.Supp. 486 (D.D.C.1979). In *Zale*, the court held that section 6103 provided the sole standard governing disclosure of returns and return information, because in its view any other interpretation would render the subsequently enacted tax disclosure scheme "an exercise in legislative futility." *Id.* at 489. The *Zale* interpretation has been followed by numerous district courts,[4] and has been adopted explicitly by at least one circuit. *See, e.g., King v. IRS*, 688 F.2d 488, 495–96 (7th Cir.1982). *See also White v. IRS*, 707 F.2d 897, 900 (6th Cir.1983) (indicating that it was disposed to accept the *Zale* rationale).[5]

■ Assuming that we would be free to adopt *Zale*,[6] we decline to do so. First, we disagree that section 6103 is irreconcilable with FOIA. Prior decisions of this court have held that section 6103 qualifies as an exemption statute under 5 U.S.C. § 552(b)(3). *See, e.g., Willamette Inds. v. IRS*, 689 F.2d 865, 867–68 (9th Cir.1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1500, 75 L.Ed.2d 931 (1983); *Long v. BEA*, 646 F.2d at 1321; *Long v. IRS*, 596 F.2d at 365–70.[7] Second, neither section 6103 nor its legislative history contains any language indicating that section 6103 should operate independently of FOIA. This omission is significant in view of the fact that the legislative history of the Tax Reform Act of 1976 amply demonstrates Congress' awareness of FOIA at the time it was writing the nondisclosure provisions of the Internal Revenue Code. In the tax reform legislation, Congress not only made extensive amendments to section 6103, but it

---

4. *See, e.g., Church of Scientology of California v. IRS*, 569 F.Supp. 1165, 1170 (D.D.C.1983); *Green v. IRS*, 556 F.Supp. 79, 83–84 (N.D.Ind. 1982) *aff'd*, 734 F.2d 18 (7th Cir.1984); *Heinsohn v. IRS*, 553 F.Supp. 791, 792 (E.D.Tenn. 1982); *Watson v. IRS*, 538 F.Supp. 817, 818 (S.D.Tex.1982); *White v. IRS*, 528 F.Supp. 119, 122 (N.D.Ohio 1981), *aff'd*, 707 F.2d 897 (6th Cir.1983); *Hulsey v. IRS*, 497 F.Supp. 617, 618 (N.D.Tex.1980); *Anheuser-Busch, Inc. v. IRS*, 493 F.Supp. 549, 550–51 (D.D.C.1980).

5. The District of Columbia Circuit has so far declined to intimate an opinion on *Zale*. *Washington Post Co. v. United States Department of State*, 685 F.2d 698, 703–04 n. 9 (D.C.Cir.1982), *vacated*, —— U.S. ——, 104 S.Ct. 418, 78 L.Ed.2d 355 (1983).

6. Although this court has not specifically addressed the *Zale* interpretation, we have held that section 6103 qualifies as an exemption 3 statute under FOIA. *Willamette Inds. v. IRS*, 689 F.2d 865, 867 (9th Cir.1982), *cert. denied*, 460 U.S. 1052, 103 S.Ct. 1500, 75 L.Ed.2d 931 (1983); *Long v. IRS*, 596 F.2d at 365.

7. *See also Moody v. IRS*, 654 F.2d 795, 797 n. 4 (D.C.Cir.1981); *Breuhaus v. IRS*, 609 F.2d 80 (2d Cir.1979); *Chamberlain v. Kurtz*, 589 F.2d 827 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Fruehauf Corp. v. IRS*, 566 F.2d 574, 578 n. 6 (6th Cir.1977); *Mason v. Callaway*, 554 F.2d 129, 131 (4th Cir.), *cert. denied*, 434 U.S. 877, 98 S.Ct. 424, 54 L.Ed.2d 295 (1977); *Tax Analysts and Advocates v. IRS*, 505 F.2d 350 (D.C.Cir.1974).

also added section 6110 to deal with the disclosure of IRS letter rulings. In doing so, it noted those cases that had held that private letter rulings were not tax returns or return information as defined in section 6103 and thus were not exempt from disclosure under section 552(b)(3) of FOIA.[8] Congress, wishing to exclude section 6110 from FOIA, specifically made known its intention by providing that section 6110 was to be the exclusive remedy where disclosure of written determinations were sought and that the rules and procedures of FOIA would not apply. 26 U.S.C. § 6110(1) (1982).[9] To replace the procedures of FOIA, Congress created a new set of procedures to be applicable to requests under section 6110. Its failure to do likewise in amending section 6103 is highly persuasive of an intent not to preempt the procedural provisions of FOIA as to requests under section 6103.

■ Moreover, we find wholly unconvincing the government's argument that section 6103 and FOIA are irreconcilable merely because one is a specific nondisclosure statute and the other a specific disclosure statute. Exemption 3 of FOIA was designed to give effect to just such explicit nondisclosure statutes as section 6103.[10] As with all nondisclosure statutes given effect by section 552(b)(3), section 6103's purpose of confidentiality is not the same as FOIA's purpose of making information available to the public. If an exemption statute's purpose were determinative, then we would have to treat all exemptions statutes as independent of FOIA, a result clearly not consonant with FOIA. We

therefore refuse to hold that section 6103 preempts FOIA.[11]

■ The government, however, argues that, although section 6103 may not preempt FOIA, the ERTA amendment does. The government bases this contention on what it calls the plain language of the amendment. The amendment provides that neither the preceding sentence (a reference to the Haskell amendment) nor *"any other provision of law* shall be construed to require the disclosure of"* standards or data used to develop standards. The government claims that this passage has reference to FOIA and evidences a congressional intent to preempt that statute. We disagree. Although FOIA surely is "any other provision of law," the only real effect of placing section 6103 within FOIA is procedural.[12] *See Britt v. IRS,* 547 F.Supp. 808, 813 (D.D.C.1982). Inclusion does not have the effect of requiring disclosure so long as the amendment satisfies the criteria of exemption 3 and the TCMP data fall within its ambit.

**B. Does the ERTA Amendment Satisfy the Criteria of Exemption 3?**

■ Parts A and B of exemption 3 are alternatives; the amendment qualifies as an exempting statute if it satisfies either A or B. *See Lee Pharmaceuticals v. Kreps,* 577 F.2d 610, 616–17 n. 8 (9th Cir.1978), *cert. denied,* 439 U.S. 1073, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979); *Church of Scientology v. United States Postal Service,* 633 F.2d 1327, 1330 n. 9 (9th Cir.1980). The government's argument that the ERTA amendment satisfies Part A will not detain us

---

**8.** *See* S.Rep. No. 938, pt. I, 94th Cong., 2d Sess. 304, *reprinted in* 1976 U.S.Code Cong. & Ad. News 3439, 3734.

**9.** *See also* S.Rep. No. 938, *supra* note 8, at 314–15, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 3744.

**10.** *See generally* Note, "The Effect of the 1976 Amendments to Exemption Three of the Freedom of Information Act," 76 Colum.L.Rev. 1029 (1976).

**11.** This is the same result reached by two other courts. *Currie v. IRS,* 704 F.2d 523, 526–28 (11th Cir.1983); *Britt v. IRS,* 547 F.Supp. 808,

809–13 (D.D.C.1982). *See also Linsteadt v. I.R.S.,* 729 F.2d 998, 1001–03 (5th Cir.1984).

**12.** That is, if section 6103 is subject to FOIA, the court will proceed de novo and the agency bears the burden of establishing the exempt status of the information. 5 U.S.C. § 552(a)(4)(B) (1982). If, on the other hand, section 6103 were considered to operate independently of FOIA, review would proceed under the narrower standard of the Administrative Procedure Act (APA). *See White v. IRS,* 528 F.Supp. at 121–24.

long. Part A embraces only those statutes leaving no room for administrative discretion to disclose. *American Jewish Congress v. Kreps*, 574 F.2d 624, 628 (D.C.Cir. 1978). Here, the statute permits the Secretary to disclose if he determines that the disclosure will not seriously impair assessment, collection or enforcement of the tax laws. The presence of such discretion prevents the statute from qualifying under Part A.[13]

■ Part B, however, does embrace statutes allowing for administrative discretion, provided that discretion is limited in one of either two ways. *American Jewish Congress*, 574 F.2d at 628. The statute can either limit discretion to a particular item or to a particular class of items that Congress has deemed appropriate for exemption, or it can limit it by prescribing guidelines for its exercise. *Lee Pharmaceuticals*, 577 F.2d at 615. Here, the statute limits the exercise of discretion to matters consisting of "standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards." Moreover, the statute contains guidelines to inform the exercise of that discretion: whether disclosure would seriously impair the assessment, collection or enforcement of the tax laws. We are consequently satisfied that "the enactment is the product of congressional appreciation of the dangers inherent

in airing particular data and incorporates a formula whereby the administrator may determine precisely whether disclosure in any instance would pose the hazard that Congress foresaw." *American Jewish Congress*, 574 F.2d at 628–29.[14] Accordingly, the ERTA amendment qualifies under Part B as an exemption statute within FOIA.

## C. Do TCMP Data Fall Within the Exemption Statute?

In refusing the Longs' request for the TCMP data at issue, the Commissioner determined that the requested data had been or would be used for determining standards for the selection of returns for examination and that their disclosure would seriously impair enforcement of the tax laws because of the risk that they could be used to discover the IRS' DIF formula.

The Longs' basic contention is that the district court erred by refusing to question the Commissioner's determination that disclosure would seriously impair tax enforcement. They argue that this refusal is inconsistent with the policy of FOIA which is to assure that the ultimate decision that certain information is exempt be made by the courts rather than by the agency itself. Because they assert that their affidavits raised a material issue of fact regarding the propriety of the Commissioner's impairment determination, summary judgment for the government was inappropriate.

---

**13.** *Fruehauf Corp. v. IRS*, 566 F.2d 574 (6th Cir.1977), is not to the contrary. That case was concerned with the release of tax information concerning one taxpayer to another who had no material interest in the information. Section 6103 absolutely prohibits such disclosures, so that Part A treatment was justified. The ERTA amendment with which we are concerned is similar to section 6103(e)(7) which has been held to qualify only under Part B. *See, e.g., Chamberlain v. Kurtz*, 589 F.2d at 838–39 & n. 33.

**14.** The aim of exemption 3 is to incorporate only those statutes where it is clear that the basic policy decision in favor of nondisclosure has been made by the Legislative rather than by the Executive Branch. *American Jewish Congress*, 574 F.2d at 628. The House Ways and Means Committee report on the tax bill makes

clear that Congress has indeed made the basic policy decision to exempt TCMP data from disclosure:

> The committee believes that Congress never intended to permit public disclosure of information that would seriously compromise the integrity of the Federal tax system. Furthermore, the committee believes that maintaining the confidentiality of certain data that the IRS uses for establishing its audit techniques outweighs any legitimate public interest or benefit to be served by the disclosure of such information. Thus, the committee bill makes clear that such information (including any such information that is being sought in any pending litigation) is protected under the disclosure provisions of the tax law.

H.R.Rep. No. 201, *supra* note 2, at 239.

The district court construed the scope of its de novo review as limited to determining "(1) whether the records at issue are 'standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards,' and (2) whether the Secretary or his delegate has in fact determined that disclosure of the records would 'seriously impair assessment, collection, or enforcement under the internal revenue laws.' " In declining to undertake an independent examination of whether there would be actual impairment of assessment, collection, or enforcement,[15] the district court relied upon Justice Stewart's concurring opinion in *EPA v. Mink,* 410 U.S. 73, 94, 93 S.Ct. 827, 839, 35 L.Ed.2d 119 (1973). There Justice Stewart described the scope of a district court's de novo review under exemption 3 as consisting merely of an inquiry into the factual existence of a statute specifically exempting the sought-after material from disclosure. *Id.* at 95, 93 S.Ct. at 839.[16]

In *EPA v. Mink,* the Court was considering the propriety of a nondisclosure decision under exemption 1, which at that time exempted matters "specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy." 5 U.S.C. § 552(b)(1) (1970). In Justice Stewart's view, the only matter to be determined de novo under that exemption was "whether in fact the President has required by Executive order that the documents in question are to be kept secret." *Id.* at 95, 93 S.Ct. at 840. Congress, however, has since repudiated that view of de novo review at least insofar as exemption 1 is concerned. In 1974, Congress amended FOIA for the express purpose of overruling this aspect of *Mink.*[17] The 1974 amendment modified exemption 1 to exempt only those matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and are (B) in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1) (1982). In addition, it made clear the district court's obligation to review de novo the propriety of the agency's classification decision.[18]

In view of Congress' reaction to *Mink,* we would hesitate under any circumstances to adopt an interpretation of exemption 3 that has already been rejected by Congress when applied to another FOIA exemption. But here we are convinced by the legislative history of exemption 3 that Congress did not intend a standard of review as circumscribed as that applied by the district court. In amending exemption 3 in 1976, Congress expressed its concern over nondisclosure statutes that delegate such a broad degree of discretion as in effect to give the agency "carte blanche to withhold

---

**15.** We reject the government's contention at oral argument that the district court must have reviewed the Commissioner's impairment determination because it characterized the Commissioner's fear as "well-founded." The district court does not tell us on what basis it found the Commissioner's fear well-founded. *See Van Bourg, Allen, Weinberg & Roger v. NLRB,* 656 F.2d 1356, 1358 (9th Cir.1981) (per curiam) (district court decisions in FOIA cases should provide court's reasoning). Nor does the Commissioner's affidavit aid us in ascertaining why the Commissioner believes that release of these TCMP data could jeopardize the integrity of the Commissioner's DIF formula. More important, the thrust of the district court's opinion precludes us from concluding that any review was made of the Commissioner's impairment determination. The district court's opinion makes it crystal clear that in its opinion the Commissioner's impairment determination is conclusive.

**16.** *See also FAA v. Robertson,* 422 U.S. 255, 269–70, 95 S.Ct. 2140, 2149, 45 L.Ed.2d 164 (1975) (Stewart, J., concurring).

**17.** *See* S.Rep. No. 1200, 93d Cong., 2d Sess. 11–12, *reprinted in* 1974 U.S.Code Cong. & Ad. News 6267.

**18.** This intent was expressed by amendment to the FOIA provision concerning the role of a reviewing court. The amended provision now reads that "the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld *under any of the exemptions* set forth in subsection (b) of this section, and the burden is on the agency to sustain its action." Pub.L. No. 93–502, § 3, 88 Stat. 1561 (1974) (emphasis added) (codified at 5 U.S.C. § 552(a)(4)(B) (1982)).

any information it pleases.".[19] Thus Congress chose to give effect under the amended exemption 3 to only those nondisclosure statutes that contain no delegation of discretion or that sufficiently inform the administrator's discretion that he will know what to do about disclosure. *American Jewish Congress*, 574 F.2d at 629. It is totally inconceivable that Congress, on the one hand, would seek to limit discretion by requiring that it be exercised according to particular criteria spelled out in the statute and, on the other hand, would render its exercise completely unreviewable, even where it had been clearly abused. We refuse to give the statute such an irrational construction.

It is suggested, however, that although reviewability of an administrator's exercise of discretion may be the general rule under FOIA, Congress has modified the rule with respect to the Commissioner's determination that release of TCMP data would seriously impair assessment, collection, or enforcement under the tax laws. Here, the argument goes, the exemption statute is drawn so as to commit the determination of impairment to agency discretion. Thus we are told that Congress intended either to cut off all review beyond the agency level or to limit judicial review to determining whether the agency's action was "arbitrary and capricious."

■ We view this argument as merely another version of the government's argument, which we have already rejected, that the ERTA amendment operates independently of FOIA and that we should look to the APA for the standard of review.[20] Even if we were to consider the APA appli-

cable, we would reject the first argument that the determination of impairment has been committed to agency discretion by law under 5 U.S.C. § 701(a)(2) (1982). The Supreme Court has told us that the exception for actions "committed to agency discretion by law" is an extremely narrow one "applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). Here, there is clearly a legal standard against which to judge the legality of the Commissioner's action: whether release of the TCMP data would seriously impair the assessment, collection, or enforcement of the tax laws. Moreover, this is not a case in which the subject matter of the dispute is beyond the capacity of the district court to determine.[21] Nor would review necessarily have an adverse impact on the Commissioner's ability to carry out his functions.[22] FOIA permits the district court to proceed in a manner consistent with the preservation of legitimate government secrets so that review would not have the perverse result of airing that which the review determines to be too dangerous to air.[23] We therefore reject the argument that Congress has committed the determination of impairment to agency discretion so that review is unavailable.

■ We likewise reject the argument that the Commissioner's determination of impairment is subject to review only to determine whether it is "arbitrary and capricious." First, we perceive no inconsistency between FOIA's de novo standard and the seemingly absolute language of section

**19.** H.R.Rep. No. 880, pt. I, 94th Cong., 2d Sess. 23, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2183, 2205.

In enacting the 1976 amendments, Congress overruled the Supreme Court's decision in *FAA Administrator v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975). That case held that a statute qualified under the language of exemption 3 as then written although it permitted the FAA "to withhold information, public disclosure of which, in [its] judgment, would adversely affect the interests of [the person objecting to disclosure] and is not required to be

disclosed in the interest of the public." *Id.* at 259, 95 S.Ct. at 2144. *See Lee Pharmaceuticals*, 577 F.2d at 614–15.

**20.** *See supra* note 12.

**21.** *See, e.g., Frakes v. Pierce*, 700 F.2d 501, 504–05 (9th Cir.1983).

**22.** *See, e.g., Russell v. Law Enforcement Administration*, 637 F.2d 1255, 1259 (9th Cir.1980).

**23.** *See infra* text accompanying notes 27–28.

6103(b)(2) which appears to delegate this determination to the Secretary or his delegate. Part B of exemption 3 clearly contemplates statutes authorizing agency discretion. *Church of Scientology*, 633 F.2d at 1330. Yet Congress made no provision in FOIA for a lower standard of review in such cases; instead, review was expressly made de novo under all the exemptions in subsection (b).[24] Second, we note that similar language in section 6103(e)(7) has been interpreted in a manner consistent with FOIA's standard of de novo review. *See, e.g., Linsteadt v. IRS*, 729 F.2d 998, 1003 (5th Cir.1984); *Currie v. IRS*, 704 F.2d at 531–32.[25] More important, however, we think that de novo review would better serve the congressional purpose of assuring that any particular nondisclosure decision was the product of legislative rather than executive judgment.[26] Review under an "arbitrary and capricious" standard would have the inevitable effect of broadening the Secretary's discretionary powers, increasing the likelihood that a particular nondisclosure decision would be contrary to the intent of Congress. We therefore conclude that the Commissioner's determination that disclosure of TCMP data would seriously impair the assessment, collection, or enforcement of the tax laws is subject to de novo review by the district court.

 In holding that the Commissioner's determination of impairment must be reviewed de novo by the district court, we do not mean to imply that the Longs are entitled to an adversarial proceeding in the nature of a trial. Rather, in FOIA cases, the district court is permitted to employ procedures that will protect against disclosure of matters that are not to be made

public. *See* 5 U.S.C. § 552(a)(4)(B). In proceeding de novo, the district court should first attempt to resolve the issue by means of detailed affidavits or oral testimony. *See EPA v. Mink*, 410 U.S. at 93, 93 S.Ct. at 839.[27] If the public affidavits and testimony do not provide a sufficient basis for decision, the district court is authorized to make an in camera review of any relevant documents and may accept nonpublic affidavits containing information that the Commissioner believes must remain confidential. In addition, the court may proceed ex parte to the extent it deems necessary to protect the integrity of the IRS' DIF formula. *See Pollard v. FBI*, 705 F.2d 1151, 1153–54 (9th Cir.1983).[28]

 We also do not mean to imply that the Commissioner's determination is to count for nothing. In particularly sensitive areas such as national security cases and cases involving investigatory records of law enforcement agencies, courts have accorded special deference to an agency's detailed affidavits. *See, e.g., Church of Scientology v. United States Department of Army*, 611 F.2d 738, 748 (9th Cir.1979) (law enforcement agencies need only establish "rational nexus" between its law enforcement duties and document); *Ray v. Turner*, 587 F.2d 1187, 1194 (D.C.Cir.1978) (in national security cases court should accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record). Deference is especially appropriate where, as here, the Commissioner is likely to have unique insights into the problems that release of TCMP data may pose. *See Ray*, 587 F.2d at 1193–94. Although we think that the Commissioner's determination is

---

**24.** *See supra* note 18.

**25.** 26 U.S.C. § 6103(e)(7) provides that "[r]eturn information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer if the Secretary determines that such disclosure would not seriously impair Federal tax administration."

**26.** *See supra* note 14.

**27.** The portion of the *Mink* opinion dealing with procedures for conducting de novo review was not overruled by the 1974 amendments. *Ray v. Turner*, 587 F.2d 1187, 1191–92 (D.C.Cir.1978). *See also* S.Rep. No. 854, 93rd Cong.2d Sess. 15–16 (1974).

**28.** If any ex parte oral testimony is taken, the court should record it so that it will be available for appellate review. However, such testimony need not be made available to the opposing party. *See id.* at 1154.

entitled to deference, we emphasize that the district court's review is still de novo and that the court must satisfy itself, on the basis of detailed and nonconclusory affidavits, that the Commissioner is correct in his belief that disclosure of the TCMP data sought by these plaintiffs would pose a substantial risk of impairing the collection, assessment, or enforcement of the tax laws.[29] Moreover, the Commissioner bears the burden of proof on this issue.

### III

The Longs' final argument is that the ERTA amendment should not be applied to them because to do so would result in "manifest injustice." The Longs rely on *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), which noted two exceptions to the usual rule that a court must apply the law in effect at the time it renders its decision: the new law will not be applied if "doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 712, 94 S.Ct. at 2016.

*Bradley,* however, was concerned with the situation where the statute did not explicitly prescribe retroactive application, and it was necessary to determine Congress' intent. Where Congress has manifested its intent in unambiguous terms, we do not think a court is free to fashion equitable exceptions for situations where it feels retroactive application would produce a manifest injustice not amounting to a violation of due process or of some other constitutional imperative. When Congress unequivocally intends retroactive application, the only limitations upon the effectuation of that intent must be rooted in the Constitution. *See Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* ___ U.S. ___, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984).

That Congress intended the ERTA amendment to apply to this litigation is

beyond all question. The House committee report specifically refers to these cases as the reason for the legislation, and states that the change in the law is designed to make "it clear that such information [data used for establishing audit techniques] (*including any such information that is being sought in any pending litigation* ) is protected under the disclosure provisions of the tax law." [30] Moreover, we perceive no constitutional limitation to applying the amendment retroactively to the Longs. Courts have consistently upheld the retroactive application of "curative" legislation which corrects defects subsequently discovered in a statute and which restores what Congress had always believed the law to be.[31] The ERTA amendment falls within that category. The obvious purpose of the amendment was to reverse our decision in *Long v. IRS* which held that TCMP data were not return information protected from disclosure by section 6103. In setting forth its reasons for the amendment, the House committee report states that "[t]he committee believes that Congress never intended to permit public disclosure of information that would seriously compromise the integrity of the Federal tax system." [32]

Before our previous decisions in these cases, the Longs had no recognized right to TCMP data. " '[T]he mere commencement of the suit did not change the nature of the right' or 'operate to deprive the government of the power to enact curative statutes which, if the actions had not been brought, would have been unquestionably valid.' " *Graham v. Goodcell,* 282 U.S. 409, 428, 51 S.Ct. 186, 193, 75 L.Ed. 415 (1930) (quoting *United States v. Heinszen,* 206 U.S. 370, 387, 27 S.Ct. 742, 747, 51 L.Ed. 1098 (1907)). We did grant the Longs an injunction, but that injunction was appealed and eventually stayed by the Supreme Court. Our action was far from the creation of a reliance interest strong

---

**29.** This court declines the government's invitation to undertake a de novo determination for itself. Appellate courts are ill-equipped for this task. *Van Bourg, Allen, Weinberg & Roger v. NLRB,* 656 F.2d at 1358.

**30.** H.R.Rep. No. 201, *supra* note 2, at 239.

**31.** *See generally* Slawson, "Constitutional and Legislative Considerations in Retroactive Lawmaking," 48 Cal.L.Rev. 216, 238–42 (1960).

**32.** H.R.Rep. No. 201, *supra* note 2, at 239. Congress made the amendment effective as to all disclosures after July 19, 1981. Pub.L. No. 97–34, § 701(b), 95 Stat. 172 (1981).

enough to warrant the protection of the due process clause.[33]

## IV

We conclude that the retroactive application of the ERTA amendment to these cases would not deprive plaintiffs of any vested right protected by the due process clause of the fifth amendment. We further conclude that the Commissioner's determination that disclosure of the specific TCMP data sought by the plaintiffs would seriously impair assessment, collection, or enforcement of the tax laws is subject to de novo review in an action brought to compel disclosure under the FOIA. Because the district court made no such review of the Commissioner's determination, the case is remanded. The district court will conduct such further proceedings in conformity with this opinion as the district court deems necessary to determine the correctness of the Commissioner's determination.

REVERSED and REMANDED.

---

**33.** Even if we were to assume that the Longs' interest in these TCMP data was entitled to the protection of due process, we would have little difficulty in concluding that the standard of due process is met here. Retroactive application of a statute comports with due process if justified by a rational legislative purpose. *Pension Bene-* *fit Guaranty Corp. v. R.A. Gray & Co.*, 104 S.Ct. at 2718. Here, the rational purpose justifying retroactive application is the prevention of precisely the evil—disclosure of information that would compromise tax administration—which prompted Congress to act in the first place.